IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ERMA T. JAMES,                        )
                                      )
            Plaintiff,                )
                                      )
       v.                             )    1:18CV339
                                      )
UNIVERSITY OF NORTH                   )
CAROLINA HEALTH CARE                  )
HOSPITAL,                             )
                                      )
            Defendant.                )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court upon Defendant University of North Carolina Health Care Hospital's motion to dismiss for lack of subject-matter jurisdiction, lack of personal jurisdiction, insufficient process, insufficient service of process, and a failure to state a claim upon which relief can be granted. (Docket Entry 6.) Plaintiff Erma T. James opposes the motion in part. (Docket Entry 12.) For the following reasons, it is recommended that the Court grant in part and deny in part Defendant's motion to dismiss.

**I. BACKGROUND**

Plaintiff filed this action against Defendant on March 27, 2018 in the North Carolina General Court of Justice in Guilford County. (Compl., Docket Entry 2.) The action was then removed to the United States District Court for the Middle District of North Carolina. The complaint contains four causes of action against Defendant: (1) discrimination on the basis of race in violation of 42 U.S.C. § 2000e-2(a); (2) discrimination on the basis of disability in

violation of 42 U.S.C. § 12112(a); (3) discrimination on the basis of retaliation in violation of 42 U.S.C. § 2000e-3(a); and (4) the intentional tort of assault and battery. (Compl. ¶¶ 11-47.) To support these claims, Plaintiff alleges the following:

Plaintiff is an African-American who has been employed by Defendant as a Nursing Assistant II since September of 2015. (*Id.* ¶ 3-4.) In January of 2017, Phillip Hawkins ("Hawkins"), a Caucasian and fellow employee of Plaintiff, squirted saline solution onto the pants of Plaintiff. (*Id.* ¶ 7.) In March of 2017, Hawkins sprayed Plaintiff with cold surgical spray. (*Id.*)

On July 12, 2017, Clarence Runnels ("Runnels"), who is Caucasian, was instructing a class for Defendant at which Plaintiff was attending. (*Id.* ¶ 5.) There, Runnels portrayed a black patient in a negative manner and a white patient in a positive manner. (*Id.*) Plaintiff made the point that the black patient could be helped by a hospital attendant, but Runnels stated peremptorily that the black patient could not be helped. (*Id.*) Thereafter, Runnels came up from behind Plaintiff and pulled Plaintiff's hair, jerking Plaintiff's head back. (*Id.*) Three times Plaintiff told Runnels to let go, but he did not let her hair go until a fellow student insisted that Runnels do so. (*Id.*) Afterwards, Plaintiff reported the incidents on July 12, 2017, to Gigi Dube-Clark ("Dube-Clark"), Plaintiff's assistant manager, who is Caucasian. (*Id.* ¶ 6.) Dube-Clark reported the information to Susan O'Leary ("O'Leary"), her manager, who is Caucasian. (*Id.*) According to Plaintiff, O'Leary and Runnels are good friends. (*Id.*)

On August 16, 2017, Hawkins threw a roll of surgical tape at Plaintiff. (*Id.* ¶ 7.) Plaintiff reported this incident, along with the prior incidents involving Hawkins, to O'Leary, who stated that it was "no big deal" and that Hawkins "does it out of love." (*Id.*) On August 17,

2

2017, Jim Norman ("Norman"), a fellow employee of Plaintiff who is Caucasian, sprayed Plaintiff with pain-easing spray. (*Id.* ¶ 8.) On October 17, 2017, O'Leary provided Plaintiff with a written consultation, falsely stating that Plaintiff had been acting improperly at the nursing station. (*Id.* ¶ 9.)

On December 12, 2017, Norman taunted and spoke rudely to Plaintiff. (*Id.* ¶ 8.) That same day, O'Leary filled out a corrective action report, falsely stating that Plaintiff had been loud and had engaged in emotional outbursts at work. (*Id.* ¶ 9.) Defendant took no disciplinary or corrective action with respect to the conduct committed by Runnels, Hawkins, nor Norman. (*Id.* ¶ 10.) In February 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and subsequently filed this civil action.

Defendant has moved to dismiss all four causes of action. (*See* Docket Entry 6.) In her response brief, Plaintiff has conceded that the second, third, and forth causes of action — discrimination on the basis of disability, discrimination on the basis of retaliation, and assault and battery—should be dismissed. (Docket Entry 12 at 1-2.) Thus, without further discussion, the undersigned recommends that Plaintiff's second, third and fourth causes of action be dismissed. As such, the only cause of action that remains is discrimination on the basis of race.

## II. STANDARDS OF REVIEW

Defendant contends that dismissal is appropriate pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6). The standard of review for each rule is set forth below.

3

### A. Rules 12(b)(1), 12(b)(2), 12(b)(4), and 12(b)(5)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek dismissal of a complaint because the Court lacks subject-matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). When a defendant motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of showing that federal jurisdiction exists. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). For the purpose of this inquiry, "all the facts alleged in the complaint are assumed to be true . . . ." *Id.* ("[T]he plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."). Should the Court conclude that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

Similarly, a defendant may seek dismissal of a complaint because the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden [of] making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng's Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). Additionally, under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), a defendant may seek dismissal for insufficient process and insufficient service of process, respectively. Fed. R. Civ. P. 12(b)(4), (5). When a defendant motions to dismiss under Rule 12(b)(4) or Rule 12(b)(5), the plaintiff has the burden of establishing that the process was sufficient and that service of process was valid. *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003). Where a plaintiff does not effectuate "valid service of process, the district court [is] without jurisdiction of the defendant . . . ." *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

4

## B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relied that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (*quoting Twombly*, 550 U.S. at 570). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are

5

not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does not, however, unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.* at 555 (internal citations omitted). "Rule 12(b)(6) does not countenance . . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416, U.S. 232, 236 (1974)).

As noted by the Supreme Court in *Twombly*, employment discrimination claims carry no heightened pleading standard. 550 U.S. at 570. Likewise, Title VII plaintiffs are not required to allege specific facts establishing a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002). The Fourth Circuit has not, however, interpreted *Swierkiewicz* as removing the burden on a plaintiff to plead facts sufficient to state all the elements of her claim. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003) (holding that plaintiff failed to plead sufficient facts in support of her hostile work environment claim by failing to show that the conduct was based on race or was severe or pervasive).

## III. ANALYSIS

Defendant has moved to dismiss the Complaint for the following reasons: failure to use the proper legal name of Defendant when captioning the cause of action; failure to properly serve process upon Defendant; Defendant's non-waiver of sovereign immunity and failure to allege waiver of sovereign immunity by Defendant in the Complaint; and failure to state a claim upon which relief can be granted. (Docket Entry 6.)

### A. Failure to Use Legal Name of Defendant

Defendant first argues that the Court must dismiss the complaint under Rule 12(b)(2) and 12(b)(4) due to Plaintiff's failure to use the proper legal name of Defendant when captioning the cause of action. (Docket Entry 8 at 7.) Failure to name the proper party in the complaint constitutes grounds for dismissal. *See Davidson v. Mem'l Mission Hosp., Inc.*, No. 1:01CV51, 2001 WL 1019786, at *1-2 (W.D.N.C. June 15, 2001) (unpublished). If appropriate, however, a court has the discretion to substitute *nunc pro tunc* the real party for the mistaken party following the dismissal of the complaint. *Id.* at *2.

Here, Plaintiff failed to name the proper party: instead of naming the "University of North Carolina Health Care System" as the defendant, Plaintiff complained against the "University of North Carolina Health Care Hospital." (Compl., Docket Entry 2.) As noted by statute, the proper name for this entity is "University of North Carolina Health Care System." *See* N.C. Gen. Stat. § 116-37(a)(1). Although it is seemingly trivial, it is clear that Plaintiff has misidentified the proper party in interest in this matter. Under the circumstances, the undersigned concludes that the Court should dismiss this action against the "University of North Carolina Health Care Hospital," and the real party in interest—University of North

7

Carolina Health Care System—should be substituted *nunc pro tunc*. *See United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 874 (4th Cir. 1947) ("Under modern practice, if the right party is before the court, although under a wrong name, an amendment to cure a misnomer of parties will be allowed.").

### B. Failure to Sufficiently Serve Process upon Defendant

Defendant next argues that the Court must dismiss the Complaint under both Rule 12(b)(2) and 12(b)(5) due to Plaintiff's failure to properly serve the process upon Defendant. (Docket Entry 8 at 8-9.) As previously stated, Plaintiff bears the burden of establishing that service of process complied with the law. *Elkins*, 213 F.R.D. at 275. As long as the defendant had actual notice of the pending suit, the requirements of the law "should be construed liberally[.]" *Id.* In other words, "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco*, 733 F.2d at 1089.

Under Federal Rule of Civil Procedure 4(j)(2), service on a state agency[1] can be perfected either through delivery of a copy of the summons and complaint to the chief executive officer or "in the manner prescribed by the state's law for serving a summons or like process on such defendant." Fed. R. Civ. P. 4(j)(2). Under North Carolina law, a plaintiff must serve an "agency of the state" by delivering a copy of the summons and complaint to

---

[1] Defendant University of North Carolina Health Care System is an agency of the State. *See Thomas v. North Carolina*, 2013 WL 566481, at *7 (W.D.N.C. 2013) (unpublished) (stating that "[d]efendants are all agencies of the State of North Carolina[,]" where University of North Carolina Health Care System was a defendant).

8

the state agency's appointed process agent personally, by certified or registered mail, or by depositing both the summons and complaint with a designated delivery service. N.C. Gen. Stat. § 1A-1, Rule 4(j)(4). In the event that the state agency has not appointed a process agent, North Carolina law requires delivery of process to the Attorney General (or a deputy or assistant attorney general). *Id.* However, under Federal Rule of Civil Procedure Rule 4(a)(2), "[t]he court may permit a summons to be amended." *Wright v. N.C. State University*, 1998 WL 937273, *5 (E.D.N.C. 1998) (unpublished).

Here, Defendant is an agency of the State, therefore a copy of the summons and complaint was required to be delivered to the chief executive officer of Defendant, which it was not, or according to North Carolina law. Under North Carolina law, Plaintiff was required to serve the summons and complaint upon Defendant's process agent, yet failed to do so. In her opposition brief, Plaintiff states that once she obtains information regarding the process agent for Defendant, "it will be simple task to have a new summons issued and to have the process agent . . . served on behalf of [Defendant]." (Docket Entry 12 at 3.) The Court notes that Defendant did receive actual notice of this action. Thus, amending the summons and allowing Plaintiff time to serve the amended summons would be appropriate. *Wright*, 1998 WL 937273, at *5 ("Because defendant was unequivocally put on notice [of the case] by [plaintiff], a fact which is evidenced by the Attorney General's filing of a motion to dismiss on behalf of the [defendant], defendant will not be prejudiced if this court allows plaintiff to amend her summons."). However, the undersigned concludes that it is unnecessary to permit

Plaintiff additional time to effectuate proper service. As further explained below, Defendant's motion to dismiss for failure to state a claim should be granted.[2]

## C. Failure to State a Claim for Racial Discrimination

Defendant next argues that the Court must dismiss the complaint under Rule 12(b)(6) due to Plaintiff's failure to state a claim upon which relief may be granted. (Docket Entry 8 at 12-30.) Under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. 2000e-2(a). Discrimination based upon race is generally presented in two distinct scenarios: a racially hostile work environment or disparate treatment.

Preliminarily, Defendant argues that Plaintiff has stated the cause of action "generally, failing to specify if the claim is for a racially hostile work environment or a [sic] for disparate treatment on the basis of race." (Docket Entry 8 at 12.) However, upon review of the

---

[2] Defendant also raises an Eleventh Amendment immunity argument and further acknowledges that the Fourth Circuit has been unclear on whether dismissal on Eleventh Amendment immunity grounds is pursuant to Rule 12(b)(1), (b)(2), or (b)(6). (Docket Entry 8 at 10-11; *see also McCants v. Nat'l Collegiate Athletic Ass'n*, 251 F. Supp. 3d 952, 954-55 (M.D.N.C. 2017) (discussing legal standard for dismissal on Eleventh Amendment immunity grounds)). This Court has recognized the recent trend of districts courts within the Fourth Circuit that have generally considered the immunity defense on subject-matter jurisdictional grounds. *McCants*, 251 F. Supp. 3d at 955. As protection of the Eleventh Amendment, "[s]overeign immunity is the privilege of the sovereign not to be sued without its consent." *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). When a state or its agency enjoys sovereign immunity (and such immunity has not been waived), a court lacks subject-matter jurisdiction over the defendant. *See Kirby v. N.C. State Univ.*, 2015 U.S. Dist. LEXIS 30140, at *9 (E.D.N.C. 2015) (unpublished). Here, as to Plaintiff's remaining racial discrimination Title VII claim, Congress has overridden immunity of such claims; therefore, the Court has subject-matter jurisdiction over Plaintiff's claim. *See Jennings v. Univ. of N. Carolina at Chapel Hill*, 240 F. Supp. 2d 492, 498 (M.D.N.C. 2002) ("Congress has not overridden [Eleventh Amendment] immunity [except] for Title VII [claims].").

Complaint, it appears that Plaintiff's claim is for a hostile working environment rather than disparate treatment. The complaint alleges no adverse employment action.[3] *See Coleman v. Md. C.A.*, 626 F.3d 187, 190 (4th Cir. 2010) (describing the elements of a disparate treatment cause of action, which includes the suffering of adverse employment action), *aff'd sub nom* 566 U.S. 30 (2012) (addressing only Eleventh Amendment sovereign immunity issue). Rather, all of the facts alleged focus on workplace abuse, both verbal and physical, giving Defendant notice that the claim is for a hostile work environment. The issue then becomes whether Plaintiff has pleaded facts sufficient to state all the elements of her claim.

To state a claim of racial discrimination based on a hostile work environment, Plaintiff must allege that she was (1) subjected to unwelcome conduct that was (2) based on her race, (3) sufficiently severe or pervasive to alter the conditions of her employment and create and abusive work environment, and (4) that there is some basis for imposing liability on the employer. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001). To succeed on such a claim, Plaintiff must allege facts which link Defendant's actions to racial discrimination. *Bass*, 324 F.3d at 765. To establish the third element, Plaintiff must show that the work environment was not only subjectively hostile, but also objectively so. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Such proof depends upon the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v.*

---

[3] Plaintiff also concedes to this in her response brief. (*See* Docket Entry 12 at 1-2 ("[P]laintiff has not alleged, and cannot allege, any adverse employment action taken against her by [D]efendant[.]"; *see also id.* at 8 (setting forth factors for hostile work environment claim)).

*Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "Complaints premised on nothing more than 'rude treatment by [coworkers],' *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006), 'callous behavior by [one's] superiors,' *Bass*, 324 F.3d at 765, or a 'routine difference of opinion and personality conflict with [one's] supervisor,' *Hawkins*, 203 F.3d at 276, are not actionable under Title VII." *Id.* at 315-16. "'Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).

Here, at the very least, Plaintiff's Complaint is arguably sufficient as to the first, third, and fourth elements. The complaint alleges five instances of physical assaults and four less-than-pleasant engagements with a manager in over two years of employment. (Compl. ¶¶ 5-10.) In regards to physical abuse, it is certainly unwelcoming and if occurring often enough, it can lead to an abusive environment. *See Alexander v. City of Greensboro*, 2013 WL 6687237, at * 19 (M.D.N.C. 2013) (citing *Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1101-02 (8th Cir. 2001) (stating that an abusive work environment could be established where the defendants threw tacks in the path of the plaintiffs' cars and spitting on their car windows every day)); *Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006) (internal citations and quotations omitted) ("[W]hen the physical contact surpasses what (if it were consensual) might be expected between friendly coworkers . . . it becomes increasingly difficult to write the conduct off as a pedestrian annoyance."). Additionally, Plaintiff alleged that she reported the behavior of her coworkers to her supervisor, but the supervisor failed to take effective action to stop it. (Compl. ¶¶ 6-10.) Thus, the conduct alleged is imputable to Plaintiff's employer. *Foster*, 787 F.3d at 254-55.

However, Plaintiff's Complaint is devoid of allegations that Defendant's conduct was motivated by Plaintiff's *race*, which is the cornerstone of a racial discrimination claim. For example, Plaintiff does not allege that Defendant's alleged physical assaults were coupled with racially offensive language. *See e.g., Johnson v. Angels*, 125 F. Supp. 3d 562, 569 (M.D.N.C. 2015) (internal citations omitted) ("[C]ases involving such racial epithets as precisely the type of case where harassment, even if "isolated," "can properly be deemed to be 'extremely serious' " and capable of altering the terms and conditions of employment."). Plaintiff asks the Court to accept the unequal treatment of hypothetical patients in one classroom presentation (*see* Compl. ¶ 5), in addition to the simple fact that Plaintiff is African-American and the alleged abusers are all Caucasian, (Docket Entry 12 at 8-9), as allegations sufficient to find it plausible that the conduct alleged was based on race. However, there is no law to support this position. Since Plaintiff has failed to allege more than a sheer possibility that the conduct was motivated by race, this claim fails. *Welton v. Durham Cty.*, No. 1:17-CV-258, 2017 WL 3726991, at *4 (M.D.N.C. Aug. 28, 2017) ("[Plaintiff] includes no factual allegations in the complaint . . . that any offensive language was used in her presence . . . nor has she alleged facts which plausibly support a claim that any harassment was based on her protected status of race or gender."); *Bass*, 324 F.3d at 765 ("[T]he facts [Plaintiff] alleges merely tell a story of a workplace dispute regarding her reassignment and some perhaps callous behavior by her superiors. They do not describe the type of severe or pervasive gender, race, or age based activity necessary to state a hostile work environment claim.").

## III. CONCLUSION

For all these reasons, **IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Dismiss (Docket Entry 6) be **GRANTED IN PART AND DENIED IN PART** as follows:

(1) Defendant's Rule 12(b)(1) Motion to Dismiss be **DENIED**;

(2) Defendant's Rule 12(b)(2) Motion to Dismiss be **GRANTED** as to the improperly named defendant "University of North Carolina Health Care Hospital," and that "University of North Carolina Health Care System" be **SUBSTITUTED** *nunc pro tunc* as the real party in interest; and

(3) Defendant's 12(b)(6) Motion to Dismiss be **GRANTED** and this action be **DISMISSED** against Defendant University of North Carolina Health Care System.

Joe L. Webster
United States Magistrate Judge

September 20, 2018
Durham, North Carolina